ABRAM S. HEWITT, Appellant, v. JAMES C. YOUNG, Appellee.

1. **Principal and Agent:** FRAUD : LIABILITY OF AGENT.   The defendant having procured an option upon certain lands giving him the privilege of buying or of procuring a purchaser therefor at a price stated, and providing that he should receive a certain commission in the event of a sale, entered into an agreement with the plaintiff to purchase for him and procure a conveyance of said lands at a price largely in advance of the price which the owner had agreed to accept under said option, but which the plaintiff was lead to believe was the price demanded by the owner.   The latter contract further provided that the defendant should act as the

plaintiff's agent in the management and resale of the property, without compensation other than one-half of the profits realized after the plaintiff had been reimbursed for the full amount of the purchase price with interest. The sale having been consummated upon these terms, and the defendant having converted to his own use the difference between the amount received from the plaintiff and the price actually paid for the land, *held*, that the plaintiff was entitled to recover the amount of such difference from the defendant.

2. Action: PARTIES IN INTEREST: EVIDENCE. In a letter written to the defendant prior to the execution of the above contract the plaintiff stated that the purchase contemplated was for his wife, but by the contract as closed the purchase was to be made for the benefit of the plaintiff. *Held*, that under the evidence the plaintiff and not his wife was the real party in interest.

*Appeal from Cedar Rapids Superior Court.*—HON. JOHN T. STONEMAN, Judge.

FRIDAY, FEBRUARY 6, 1891.

THE plaintiff is a resident of the city of New York, and the defendant of Cedar Rapids, Iowa. On the ninth day of April, 1886, W. S. Rickard executed to the plaintiff a deed for fifty-eight and three-fourths acres of land, situated near the city of Cedar Rapids, Iowa, and received as a consideration therefor the sum of thirteen thousand, four hundred and eighteen dollars and seventy-five cents. In the negotiations which resulted in making the conveyance, the plaintiff was unknown to Rickard, the business being entirely transacted between Rickard and the defendant; the defendant alone being in correspondence with the plaintiff, and receiving and paying over the purchase price of the land. For the purchase of the land the plaintiff transmitted to the defendant nineteen thousand, five hundred and thirty-four dollars and thirty-seven cents, and, as only thirteen thousand, four hundred and eighteen dollars and seventy-five cents was paid by the defendant for the land, this action is brought to recover back the difference between the amount remitted to the defendant and the amount paid out by him, namely, sixty-one hundred and fifteen dollars and sixty-two

cents. The point of contention is as to the capacity in which the defendant acted in making the purchase; that is, whether he had so acted that the plaintiff was entitled to the land for the actual purchase price thereof from Rickard, or so that the defendant should be treated as the plaintiff's vendor, and entitled to the sixty-one hundred and fifteen dollars and sixty-two cents, as profits on his purchase and sale of the land. The written contracts to aid us are as follows:

"CEDAR RAPIDS, IOWA, December 15, 1885.

"For a valuable consideration of James C. Young's services, I hereby agree to deed, by a good and sufficient warranty deed, the fifty-five acres, more or less, being all my land in Rapids township except the southeast corner, containing five acres, including fence and barn, being twenty-four acres in southwest quarter (1-4) of northwest quarter (1-4) and thirty-five acres in northwest quarter (1-4) of the southwest quarter (1-4), section 33, township 83, range 7, for the sum of three hundred dollars ($300) an acre for land in the southwest quarter (1-4) of the northwest quarter (1-4), and two hundred dollars ($200) an acre for land in northwest quarter (1-4) of southwest quarter (1-4); and I agree to pay James C. Young five-per-cent. commission for effecting this sale, and deed upon receipt of cash for the above property, providing this contract shall remain in force only until January 15, 1886.                W. S. RICKARD."

"CEDAR RAPIDS, IOWA, January 14, 1886.

"For value received I hereby extend for twenty days from and after January 16, 1886, the option given to James C. Young, December 16, 1885, for sale of my land.                W. S. RICKARD."

"CEDAR RAPIDS, IOWA, February 3, 1886.

"In consideration of two hundred dollars to me in hand paid (the receipt of which is hereby acknowledged), I hereby extend the option given to James C. Young for sale of my land to April 6, 1886. This option was given December 16, 1885. That in case said Young should buy said land, or find a purchaser for same at

the expiration of this extension, said sum of two hundred dollars shall be applied as part payment on said land.                              W. S. RICKARD."

The following is between the plaintiff and the defendant:

"Agreement made this seventeenth day of April, in the year 1886, by and between Abram S. Hewitt of the first part, and James C. Young of the second part, witnesseth: That in consideration of the mutual agreements hereof, and of one dollar by each party to the other in hand paid, the receipt whereof is hereby acknowledged, the parties hereto have covenanted and agreed, and that they do hereby covenant and agree, as follows: *First.* Mr. Young, that he will procure the purchase for and conveyance to Mr. Hewitt of the following described premises * * *; making a total of fifty-eight and three-fourths acres more or less, all situated in Rapids township, Linn county, Iowa, at the price of three hundred and fifty dollars per acre, which Mr. Hewitt agrees to pay therefor. *Second.* Mr. Young agrees to act as agent for Mr. Hewitt in the management and sale of the property. *Third.* All proceeds of the sale should be applied to the reimbursement of the cost, with interest at the rate of five per cent. per annum, payable at the end of each calendar year, and of all taxes and other necessary charges and expenses of the property. *Fourth.* If any surplus shall remain, Mr. Young shall be entitled to one-half for his services. *Fifth.* If Mr. Young shall die after full reimbursement to Mr. Hewitt, with interest, he shall be entitled to his compensation, notwithstanding that there shall remain a residue of the property which shall not have been sold. If he shall die previously, nothing shall be due Mr. Young or to his estate for any services which he may have rendered. *Sixth.* Mr. Young is to prepare all necessary papers without expense to Mr. Hewitt, and is not to charge commissions, or to make any charge other than that herein provided for. If other agents are employed by him, it must be at his expense. *Seventh.* Unless Mr. Hewitt shall be

fully reimbursed with interest within five years, this agreement shall terminate, and without any liability by Mr. Hewitt for Mr. Young's services.

"JAMES C. YOUNG,

"ABRAM S. HEWITT."

By a stipulation the cause was to be tried in the superior court, and on appeal, as an equitable proceeding. Testimony was taken, and the cause submitted to the superior court, and judgment entered for the defendant, from which the plaintiff appealed.—*Reversed.*

*J. W. Bull*, for appellant.

*Chas. A. Clark* and *Rickel & Crocker*, for appellee.

GRANGER, J.—I. Let us first look to the situation of the parties under the written contracts, and then

1. PRINCIPAL and agent: fraud: liability of agent.

inquire if it is changed by the other evidence, and, if so, to what extent. Under the contract the defendant with Rickard first made, there is nothing to indicate that either party to the contract then thought of the defendant's becoming the purchaser; for by it he was to render "services," and was to receive a "commission" for effecting a sale. It is likely true that it would have been immaterial to Rickard whether the defendant furnished the money and took the title to himself, or procured a purchaser, and the purpose of the present inquiry is only to show the then intention of the defendant. When the time was extended, February 3, 1887, it seems to have been contemplated that the defendant might do one of two things,—purchase the land himself, or "find a purchaser." Looking next to the contract between the plaintiff and the defendant, we find that Mr. Young has there agreed "that he will procure the purchase for and the conveyance to Mr. Hewitt of the premises in question." The language to us is quite unmistakable, that the defendant then undertook an exercise of his right under his agreement with Rickard to procure a purchaser, and that then he was not then attempting to

sell any right he possessed in the land. His only right was that of procuring a purchaser or buying himself. The latter he did not attempt. He agreed with the defendant to purchase the land for him at an agreed price, which, without explanation, would be understood as the price to be paid to Rickard. There is nothing in the written contract to indicate that the land was purchased from the defendant, or that any part of the purchase price was to go to him.

The appellee attaches importance, in this connection, to the fact that two hundred dollars was paid by him to Rickard when the time was extended, February 3, 1886, and treats it as a payment of a part of the purchase price of the land. Looking to the language of the agreement under which the two hundred dollars was paid, we find that it is not a payment on a purchase by the defendant, but, "in case said Young shall buy said land or find a purchaser," it shall be applied as part payment. Of course, if he found a purchaser, he would be entitled to a return of the money in closing the transaction. The two hundred dollars were paid by the defendant to secure more time in which to purchase or find a purchaser, with the right, if he succeeded, to have it applied for his benefit. Upon the face of the contracts in writing the question is not a doubtful one. Looking, then, to other evidence to aid in a correct interpretation of them, and we find very little, if anything, to aid appellee's theory of the transaction. Importance is attached to some detached statements in the correspondence had before the written contract was made, as that the defendant offered to sell the plaintiff the land, but the correspondence shows the offer or statement to have been such as is made by agents generally selling land for the owner, and means nothing more than that they are intrusted with or have the sale of the land. Barring some such expressions, and the substance of the correspondence preceding the contract is in support of our view of the written contract.

It is strenuously urged that the defendant was not the agent or partner of the plaintiff in the purchase of

the land, but that the partnership, by the terms of the contract, was to commence after the purchase, and, for the purpose of the case, we may assume that to be true in its technical sense (though we must not be understood as so holding), and what is the situation of the case on the face of the contract? It is this: The plaintiff and the defendant have agreed upon a partnership in the division and sale of the premises. The premises are to be purchased for that purpose, and owned by the plaintiff; and the defendant is to make the purchase for him for a stipulated price. The appellee's purpose in denying the agency and partnership is to make way for a right to claim this difference in the price actually paid for the land and that which plaintiff supposed he was paying. Is there any legal name or significance to be attached to the apparent position or capacity in which the defendant acted to justify such a right? None, unless in legal contemplation the defendant was the vendor; and to so hold is to violate the letter and spirit of the contract. To our minds, the actual facts controlling the action of the parties in the purchase of the land are these: The defendant did not design to purchase the land. He sought the plaintiff as a purchaser. He represented the value of the land to be twenty thousand, five hundred and sixty-two dollars and fifty cents, when he knew it was on the market for thirteen thousand, four hundred and eighteen dollars and thirty-seven cents. He conceived the purpose to speculate to the extent of this difference, less a commission of five per cent., which he offered the plaintiff as an inducement to make the purchase. The purpose was secretly reserved from the plaintiff and Rickard. Hewitt purchased the land for what he supposed it to be offered for in the market, and the defendant, as the result of his secret reservation, profited to the extent of sixty-one hundred and fifteen dollars and sixty-two cents. It needs no argument to show that such a transaction is fraudulent, and a court of equity cannot look with complacence upon it.

II.   It is urged that the plaintiff is not the real party in interest.   In a letter from the plaintiff to the defendant, written March 23, 1886, it is said:   "Inasmuch as the purchase is to be made for the account of Mrs. Hewitt, the title had better be made in my name, and not in that of Mr. Cooper."   The letter was written before the contract was completed.   The petition represents the plaintiff as the party in interest, and the proofs show the fact.   The contract on which recovery is to be had is made in the name of the plaintiff, and nothing in the case, barring the letter referred to, indicates that the plaintiff is not the real party in interest.

*2. ACTION: parties in interest: evidence.*

The plaintiff should have judgment for the amount of his claim, and the cause will be remanded to the superior court for that purpose.   REVERSED.